[L. A. No. 11618. In Bank.—January 29, 1930.]

ARTHUR C. VAUGHAN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Arthur C. Vaughan, *in pro. per.,* and Frank R. Willis, for Petitioner.

R. P. Jennings for Respondent.

WASTE, C. J.—Petitioner makes application for reinstatement as an attorney at law. On accusations filed by the Los Angeles Bar Association, Arthur C. Vaughan, an attorney, was disbarred on December 30, 1920, by order of the Superior Court of the State of California, in and for the County of Los Angeles, the grounds of disbarment being that the accused was guilty of the offenses and acts charged against him, each of which involved moral turpitude and dishonesty on the part of the accused. The facts on which the accusations were based were, among others, (1) that the attorney converted and appropriated to his own use money placed in his hands by a client for the special purpose of being used as expenses in preparing and printing a transcript and briefs on appeal; (2) that, for the purpose of obtaining an extension of time to file a *supersedeas* bond in a case pending before the Supreme Court, the attorney made and filed an affidavit containing statements that were untrue, and known by the attorney to be untrue; (3) that the petitioner recovered certain bonds for a client, but, instead of delivering them to the owner, used them as security for a personal loan of $600. On appeal the facts were carefully considered by this court, and it concluded that the evidence was sufficient on the three grounds noted to sustain the order of disbarment. The judgment was accordingly affirmed. (*In re Vaughan,* 189 Cal. 491 [24 A. L. R. 858, 209 Pac. 353].)

During the year 1927 petitioner filed in the District Court of Appeal for the Second Appellate District his petition for reinstatement. Subsequently the court entered an order dismissing the application without prejudice upon the ground that the court was of the view that, under the provisions of the State Bar Act (Stats. 1927, p. 38), it was without jurisdiction to act on the merits concerning the petition. Petitioner then filed a petition for reinstatement with the Board of Governors of The State Bar of California. After due notice to the applicant a hearing was had before the board of bar examiners. As a result of this investigation the board of bar examiners made its findings that the applicant "is not possessed of such moral qualifications as to entitle him to reinstatement," and refused to favorably recommend petitioner to this court for re-admission as an attorney at law.

Petitioner has now filed with this court what he styles a petition for a writ of review, but which will be regarded as an application for admission to the bar. (Decision of this court denying a hearing in *In re Mash*, 39 Cal. App. 551 [179 Pac. 898]; *Brydonjack* v. *State Bar, ante,* p. 439 [281 Pac. 1018].) In his application the disbarred attorney alleges that since the date of his disbarment he has not attempted to and has not practiced law, and does not maintain an office of his own, although he seems to have rendered some services for other attorneys. During all of that time, he alleges, he has maintained himself as an upright and honorable citizen. He presents testimonials as to his qualifications as an attorney at law and as to his good character signed by some one hundred members of the bar and other citizens of Los Angeles County. He alleges that he has been severely punished, financially, and has suffered great humiliation and embarrassment by reason of his disbarment, judgment of which, he says, "has taught him a lesson he will never forget." ▮ In addition to these recommendations and general allegations, petitioner presents, in substance, the record of the evidence taken in the disbarment proceeding in the Superior Court in 1920, and analyzes the testimony in an effort to show that his conviction was not warranted. That question was settled by the decision on the appeal (*supra*), and the same contentions, now advanced, will not be again considered.

As to the other matters presented by the petition, the attitude of this court is well expressed in the following quotation: " . . . where the present conduct of an attorney satisfies the court that the continuance of his disbarment is no longer necessary, it should not be required. . . . In considering an application such as the present, while of course we cannot ignore past delinquencies, we must accord prime importance to the present manner of life and conduct of the applicant; and if we are convinced that there really has been a reformation, and that the disbarred attorney will in the future be a law-abiding citizen, and show a proper regard for the duties and responsibilities of his profession, we will lift the ban that past lapses necessitated placing upon him." (*In re Mash,* 39 Cal. App. 548, 550 [179 Pac. 898].) ▮ The question, therefore, to be now considered is whether the conduct of the attorney since the judgment of disbarment has been such as to warrant a belief that he now possesses the necessary qualifications, particularly as to integrity and character, to entitle him to the high regard and confidence of the public, warranting his re-admission to the privileges of the high office of an attorney at law.

The petitioner testified before the board of bar examiners concerning his business affairs and the manner in which he has conducted himself since his disbarment, and introduced the testimonials as to his present good character. A number of those signing the testimonials appeared and testified for petitioner, with the result that usually follows the presentation of such indorsements bearing the signatures of a large number of persons: Many of those appearing and testifying, some of whom were former judges of courts of record in this state, admitted on cross-examination before the committee of bar examiners having merely a casual or "passing acquaintance" with the applicant, and never having had that intimacy of association or contact which would enable them to give an opinion worthy of consideration in this special and important matter. We do not doubt for a moment that the signers of the indorsement of the petitioner who, as petitioner avers, "were among the most distinguished gentlemen of Los Angeles," had the best interests of the bar at heart, but we do doubt that this array of persons could have had petitioner so closely under their observation as to enable them, *en masse,* and with no

showing of fact except their general statement *en masse,* to say with assurance that the petitioner would make an honest and reliable attorney at law. (See *In re Stevens,* 59 Cal. App. 251, 256 [210 Pac. 442].) The evidence of those who testified before the examiners was, for the most part, materially weakened on cross-examination.

Entirely aside from these considerations, there are a number of matters in the long record brought here which we must assume contributed to the unfavorable report of the committee of bar examiners of the Board of Governors of The State Bar, to which we do not deem it necessary to particularly refer. Two matters, however, involving business transactions of the applicant, may have very largely influenced the adverse recommendation. It appears that since his disbarment petitioner became a bankrupt and, during the proceedings in that behalf, failed to disclose to the court in bankruptcy certain assets which he claimed at the time he became bankrupt. The inference to be drawn from this transaction is that the petitioner omitted the real property in question from his list of assets in order to cover a transaction between himself and a client named Hillman. The explanation made by the petitioner, under the circumstances set forth in the transcript, fails to convince us that the analysis of the situation and the conclusion reached by the bar examiners was not the right one. Another transaction, which no doubt weighed heavily with the examiners in determining whether or not the petitioner was sufficiently honest to entitle him to again practice law, was one between petitioner and two elderly people named Henrich, whereby petitioner, through oral negotiations, became the record owner of property stated by him at one time in his proceedings for reinstatement to be of the value of $125,000. The explanation by petitioner of these transactions was no doubt satisfactory to himself, but failed to impress the board of bar examiners. Nor are we so impressed with the showing made by petitioner before the examiners and here as to be willing to subscribe to an opinion holding that petitioner has shown such a reformation on his part as would convince not only ourselves, but the general mind, that if reinstated he would discharge his duty as a lawyer with unswerving fidelity. Such consideration must be of

controlling influence in every such proceeding as this. (*In re Stevens, supra.*)

We deem it unnecessary to further discuss the voluminous record. The Board of Governors of The State Bar, through its committees and board of bar examiners, has power under the State Bar Act to recommend to the Supreme Court for admission to practice law those who fulfill the requirements. ▉ One of the requirements, whether made by regulation of The State Bar or not, is that those seeking to practice law must be possessed of unquestioned good character and be above suspicion in their dealings with the public at large, particularly those with whom they will come in the closer relationship of attorney and client. The record brought here in this case, read alone and without the critical study and analysis made by the board of bar examiners in presenting its findings to the Governors of The State Bar, would appear on the face to entitle the applicant to be again admitted to practice law. We can but feel, however, in view of the opposition which has been filed in behalf of the Board of Governors of The State Bar, based as it is upon a critical analysis of the record, and in which the attention of the court has been called to the various points of weakness which the record contains, that the applicant has not made a sufficient showing to entitle him to a favorable consideration of his application.

The application for admission to practice law is denied.

Shenk, J., Richards, J., Seawell, J., Preston, J., and Curtis, J., concurred.

LANGDON, J., Dissenting.—I dissent from the conclusion reached in the majority opinion. I am in accord with the first portion of that opinion, wherein it is held that the correctness of the judgment in the disbarment proceedings in 1920 is concluded by the decision upon appeal therefrom and that that matter will not be again considered. I am also in accord with the general policy announced by the opinion in the quotation from the case of *In re Mash*, 39 Cal. App. 548, 550 [179 Pac. 897].

We now come to the action of the Board of Governors of The State Bar of California, in the present proceeding, in denying petitioner reinstatement as a member of the bar. Eight years after his disbarment petitioner filed with

the said Board of Governors his petition for reinstatement as an attorney at law and an order was made by said board referring the application to the committee of bar examiners, before whom a hearing was had. This committee filed with the Board of Governors their findings and recommendations, in which it was found in favor of petitioner's mental qualifications, but in which it was also found "that applicant is not in possession of such moral qualifications as to entitle him to reinstatement."

As stated in the majority opinion, this court will regard petitioner's proceeding in this court as an application for admission to the bar and we are not bound by the findings of the said committee nor the acceptance thereof by the said board. It is argued, in effect, however, by the attorney for respondent that petitioner has not sustained the burden of showing such moral qualifications as to entitle him to reinstatement.

The argument is based upon but two matters revealed by the record. The first concerns an alleged concealment of assets in proceedings in bankruptcy. It is asserted by respondent that at the time petitioner filed his schedule of assets in the bankruptcy proceeding he believed, erroneously, it is conceded, that he had an equitable interest in a piece of real property of small value, located at Sawtelle, California, growing out of an unacknowledged and unrecorded deed to his son, which interest he did not list among his assets. Respondent concedes that petitioner had no such interest and that the finding of the referee, when the matter was reopened for hearing, that there were no assets of the bankrupt, was proper. However, it is not necessary to consider this matter and the explanation thereof made by petitioner, as it is immaterial here. It is not disputed that the date of the adjudication in bankruptcy was December, 1919, and that the date of the disbarment was December 30, 1920. Therefore, any intent which petitioner may have had to deal unfairly in the bankruptcy proceeding before his disbarment is not pertinent upon the inquiry here, which is directed to ascertaining whether, since said disbarment, petitioner has developed sufficient moral strength to entitle him to reinstatement.

The other matter urged upon our attention by the respondent involves a business transaction with Mr. and Mrs.

Henrich. The outstanding feature of the record is that these people are not only not complaining of this transaction, but are most emphatic in their expressions of satisfaction and of trust, confidence and admiration for petitioner. They deeded to the sister of petitioner a valuable piece of property under a plan by which petitioner was to build thereon a hotel building and to pay Mr. and Mrs. Henrich $1,000 a month from the rentals thereof for thirty years, after which time the property was to belong to petitioner or his estate. There are details of this transaction which probably would not appeal to the business sense of experienced people, but the fundamental thing is that the Henrichs are satisfied therewith; they intended to trust petitioner and still trust him; they were not misled nor deceived. They knew of his disbarment; petitioner told them to consult a lawyer and they had an attorney who attended to their business. They are entitled to freedom to contract as they wish and to trust whom they wish without interference or suggestion by the Board of Governors of The State Bar of California. At the hearing it was pointed out to them that certain disastrous consequences to them were possible if petitioner and his sister did not deal honestly with them and they replied that these matters and things had been explained to them previously by petitioner; that they understood the entire matter from its inception and that they had been and were willing to trust petitioner and his sister and that they had not been disappointed in so doing. They had in their exclusive possession a reconveyance of the property to themselves which they might effectuate as against all the world at any moment by placing it upon record. Petitioner was not acting as their attorney and there is nothing in the record to show fraud or deceit on his part, nor a fiduciary relationship. Mr. and Mrs. Henrich are people of financial standing and of intelligence, as appears from their testimony at the hearing and from their statements on file in this case, and presumably of some business experience. They are not "two old people" as so effectively argued by respondent. The record discloses that they are about fifty years of age, strong and active; that they contemplated just such a business transaction as they entered into with petitioner, with some other person previously. Since petitioner alleges that

he 'graduated from the university in 1902, after having previously served as a minister of the Gospel, it is fair to conclude that he is as equally handicapped with age as are Mr. and Mrs. Henrich.

It is difficult for me to see how moral delinquency can be predicated upon a business transaction such as this one is, when all parties concerned are emphatically satisfied and indeed grateful and enthusiastic; when all parties, apparently, were well informed of every fact and circumstance and possible consequence attending the steps taken in the transaction and, nevertheless, elected to take such steps and still so elect; when no one has been injured and the Henrichs can, at any time, by their own action, place themselves *in statu quo.*

While it is true that some of the character witnesses at the hearing did not intimately know petitioner, the record shows that many of them had observed him carefully and for a long period of time and the characters of many of the men who signed his petition and who testified that they were satisfied with his qualifications for reinstatement should be most persuasive with this court, for these men are known to the court to be conscientious and scrupulous in every way and most exacting in their requirements of members of their own profession. It is inconceivable to me that such men would have recommended and urged the admission of an attorney at law to the bar of this state without substantial basis for such action.

While the action of the Board of Governors in disbarring erring attorneys is worthy and necessary for the protection of the public and should be supported when cause therefor exists, there is a correlative responsibility resting upon such board and upon this court not to close the door of hope and repentance to any man. When, after disbarment, with its consequent humiliation and difficulties, a man continues to live in one community for eight years, earning his living and handling transactions involving large sums of money and requiring trust and confidence upon the part of his clients, studiously and earnestly reading and studying law during these years, looking to a possible day of rehabilitation in his profession, and when, after that period of time, he has earned the recommendations of judges of the trial and appellate courts in his community, of lawyers

who brought about his disbarment and of others with whom he has worked and been associated during these years, and when the record contains absolutely nothing pertinent against his claim of moral fitness, I think he should be given another chance.

Rehearing denied.