[S. F. No. 15929.   In Bank.—July 29, 1938.]

In the Matter of the Petition of JOSEPH P. LACEY for Readmission to The State Bar of California.

Edwin V. McKenzie, Leo R. Friedman, Walter E. Hettman, Edward P. Murphy and Joseph Scott for Petitioner.

Philbrick McCoy and John A. Sutro for Respondent.

THE COURT.—Application of Joseph P. Lacey for readmission to practice law in this state after his disbarment by this court on the ground of his conviction of a felony involving moral turpitude. The application for reinstatement is based upon the ground and claim that the applicant since his disbarment has rehabilitated himself and now possesses the necessary moral qualifications and mental attainments to entitle him to be restored as a member of the Bar and to practice as an attorney in all the courts of this state.

The application was made in the first instance to the Board of Governors of the State Bar of California. Upon presentation of said application the Board of Governors of the State Bar appointed one of its members, Richard Belcher, Esq., as a committee to hold a hearing on said application and to take evidence both in support of and against said application. The committee held such a hearing which continued eight days at which a large number of witnesses were sworn and gave testimony as to the issues involved in said application. There were also filed with the committee numerous testimonials in support of said application. The applicant was present both in person and by counsel during the entire time of said hearing and the State Bar was represented by a duly appointed examiner during the last five days of said hearing. At the conclusion of said hearing the committee made findings of fact favorable to applicant and recommended his reinstatement to practice law in this state.

Before passing upon the report and recommendation of said committee and after said report had been filed with said board, it appointed one of its members, Newton M. Todd, Esq., as a "Reviewing Governor" to review the evidence and proceedings before said committee, and report his conclusions to the Board of Bar Governors. The "Reviewing Governor" complied with the order appointing him, and reported to the board his recommendation that the application of said Joseph P. Lacey for reinstatement and readmission as attorney at law be denied. After the receipt of this report and recommendation, the Board of Bar Governors held a hearing upon said application for reinstatement, at which hearing petitioner and his counsel and the examiner of the State Bar were present and presented arguments before the board for and against the reinstatement of petitioner. After argument of counsel, the matter before the board was submitted for decision. The vote upon this motion resulted in a tie, six members voting in favor of and six against said motion. Two members of the board deemed themselves disqualified and refrained from voting and one member of the board was absent. At a subsequent meeting of the board held one month thereafter, the previous vote upon the resolution to reinstate applicant was unanimously rescinded by the board. Thereupon the board proceeded to again vote upon said motion to recommend the reinstatement of applicant,

with the result that the motion was lost, nine members voting against said motion and four in favor. The two members who deemed themselves disqualified refrained from voting as they had done at the previous vote on said motion. This final action by the Board of Bar Governors was taken on March 19, 1937. On October 15, 1937, applicant filed in this court his petition to be reinstated to the practice of law notwithstanding the adverse action of the Board of Bar Governors upon his application for reinstatement made before that body. █ That this court has the inherent power and authority to admit an applicant to practice law in this state or to reinstate an applicant previously disbarred despite an unfavorable report upon such application by the Board of Bar Governors of the State Bar, we think is now well settled in this state. (*Brydonjack* v. *State Bar,* 208 Cal. 439, 446 [281 Pac. 1018, 66 A. L. R. 1507]; *Vaughan* v. *State Bar,* 208 Cal. 740 [284 Pac. 909].) The recommendation of the Board of Bar Governors is advisory only but as that body has been provided by legislative enactment as an arm of this court for the purpose of assisting in matters of admission and discipline, the greatest deference should be, and always has been, accorded to its recommendation by this court. Nevertheless the final determination in all these matters rests with this court, and its powers in that regard are plenary and its judgment conclusive. (*Fish* v. *State Bar,* 214 Cal. 215, 225 [4 Pac. (2d) 937]; *Brydonjack* v. *State Bar, supra.*)

The reinstatement of applicant was resisted on two grounds, first, that the evidence showed that applicant since his disbarment had not become rehabilitated morally to such an extent as to entitle him to be restored to the practice of law, and secondly, that since his disbarment and while he was under the disability of disbarment he had practiced law contrary to the order of the court made in said disbarment proceedings.

In support of his application for reinstatement, and for the purpose of showing that he had rehabilitated himself morally since his disbarment, the applicant presented before the committee both oral and documentary evidence consisting of letters of recommendation from members of the judiciary, members of the bar and business men and personal friends. Many of these same persons appeared personally before the committee and gave oral evidence favorable to the applicant

as to his moral fitness to again become a member of the Bar of this state. On the other hand, both the trial judge who presided at applicant's trial and the prosecuting officer at said trial reported adversely upon applicant's application. As we have before stated, the report of the committee appointed by the Board of Bar Governors was favorable to the applicant, while the "Reviewing Governor" made a contrary report. In this state of the record the application came before the Board of Bar Governors, with the result as stated above. We do not find it necessary to pass upon the question thus presented, for we are satisfied that other considerations determined a majority of the Board of Bar Governors to refuse approval of applicant's application. At the hearing before the Board of Bar Governors, different members of the board and the examiner appointed by the board, entered into an extended discussion with applicant's attorney relative to the evidence bearing upon the question as to whether or not the applicant had practiced law during the period of his disbarment. It is apparent to us that the final action of the Board of Bar Governors in denying the petition of applicant for reinstatement was based to a large extent upon evidence before it that petitioner had practiced law during the period of his disbarment. We are of the opinion after a review of the entire evidence upon the issue as to whether petitioner violated the order of disbarment by practicing law thereafter, that the preponderance of such evidence is in favor of the final conclusion of the Board of Bar Governors.

In a number of instances it was shown that applicant gave legal advice, consulted with attorneys representing interests opposed to those he represented, agreed to represent litigants in proceedings pending in court or which might be the subject of court action, and that he was paid for the services rendered by him. In none of these matters did applicant ever appear in court for any of the parties whom he agreed to represent but when it was necessary for a court appearance an attorney who is referred to in some instances in the record as Mr. Davis, although that was not his true name, acted for him in proceedings before the court, his retention as their attorney having been arranged by applicant.

*The Sheldon Matter.* In this matter, Mrs. Sheldon testified that Lacey told her he was an attorney and would take

care of her legal troubles. Her father had died and she was concerned regarding the property belonging to his estate. She testified that she paid Lacey $100 for services to be performed in connection with her father's estate. While she testified that Lacey accepted the money, she claimed that he failed to perform the services agreed upon. We are not particularly concerned with the claim in our consideration of the present issue. Applicant contended and testified that he received this fee for Mr. Davis, and that the legal services were to be performed by Mr. Davis and not by applicant. Applicant so testified and so did Mr. Davis. Applicant further testified that this fee was paid to Mr. Davis. It seems that Mr. Davis had been regularly admitted to practice law in this state, and thereafter had left the state for some considerable period of time. While out of the state he had failed to pay his dues as required under the State Bar Act and for such failure had been suspended from practice by order of this court. After such order of suspension, Mr. Davis returned to the state, but neglected to pay his dues and to be reinstated to practice. Some time subsequent to his return to the state, he was brought before the State Bar in a disciplinary proceeding in which he was charged with practicing law without a license. At the present hearing, after Mr. Davis had testified that this $100 was paid to Mr. Lacey and the latter paid it to Mr. Davis, for the purpose of impeaching him as a witness, he was shown a transcript of the proceedings in his own case before the State Bar. The transcript showed that he had represented himself in that proceeding, and that by questions propounded by him to Mrs. Sheldon, she testified that she never employed Mr. Davis to act as her attorney in the matter of her father's estate; that she employed Mr. Lacey as such attorney; and that she never paid Mr. Davis any money, although Mr. Davis had given her a receipt for the $100 some six months after it had been paid. The transcript of the proceedings in that matter further showed that Mr. Davis, when asked, "Why did you sign a receipt for money you had never received?" answered, "Foolishly, to protect the fellow. I saw he was in trouble there." There is no question that by the use of the term, "the fellow", Mr. Davis referred to the present applicant. This is made apparent from further testimony given by Mr. Davis in

his own case, as shown by the transcript. He was asked the following question, "So your explanation is that you signed this receipt in order to help out Mr. Lacey?" to which he answered, "I did, but I had known the man for years. I knew he received the money, and probably spent it and I signed the receipt." These prior statements made by Mr. Davis, not only served to completely impeach him as a witness, but taken in consideration with other facts and circumstances surrounding the relations of these two men, place the applicant in a most unfavorable light and justify an inference that the use of Mr. Davis' name in these legal proceedings was only a ruse and a subterfuge to escape the technical charge that he was practicing law.

It further appears without any contradiction that during a considerable part, if not the entire time, applicant claims that he was acting in these and other matters, hereinafter considered, as the clerk of Mr. Davis, the latter was under suspension for failure to pay his dues to the State Bar, that for that reason he had no right to practice law at that time, that he had no office at which he held himself out as practicing law, and that he was then engaged as an employee in a local bank. Furthermore, it appears without conflict that when in the legal proceedings in which applicant was acting, it was necessary to state the place where notice should be sent to the attorney of the person for whom applicant was acting, the place so designated in one instance was not the office or place of business of Mr. Davis, but the home of applicant, and in another instance, the place where applicant was employed was given as Davis' address. In no case was Davis' home or place of business designated as the place where notice was to be sent to the attorney. To hold that these proven facts do not show that applicant was practicing law would be to sacrifice form to substance and to permit one, indirectly and by subterfuge to do that which he is prohibited from doing directly. He performed all legal services required, except appearing in court, and he was paid by these people for services rendered in their behalf.

*The Mary Coghlan Matter.* Mary Coghlan testified that she paid applicant $50, part of which was to cover costs and filing fee and the balance of his fee, in a proceeding pending in court. In that proceeding when it was necessary for a court appearance, Mr. Davis acted for Mr. Lacey.

However, Mrs. Coghlan testified as to Mr. Davis' court appearance. "Of course, Mr. Lacey did not go in court. Mr. Davis did, although I didn't know at the time Mr. Davis was connected with me. I hadn't employed him." Mr. Davis was then under suspension for non-payment of dues, and, as stated before, had no established law office and was a bank employee.

In another case, Mr. Lacey wrote to the attorney for the plaintiff asking for additional time in which the defendants might appear, but subsequently when a court appearance was necessary, it was made either by Mr. Davis or in his name. Other instances are shown in which the applicant was consulted on legal matters, and in which he advised those seeking advice. According to his evidence he always referred these parties to Mr. Davis when court proceedings were required even though during all this time Mr. Davis was employed in a local bank, had no law office and was under suspension from practicing law.

The evidence shows without question that applicant acted as the attorney for Mrs. Sheldon and Mrs. Coghlan in legal matters involving court appearances. He did not personally appear in court for either of these parties but when court action was necessary, had Davis act for him. In the Sheldon matter while he and Davis contend otherwise, the evidence in our opinion shows that he received the entire fee of $100 for services performed for Mrs. Sheldon. In the Coghlan matter, the latter testified that she paid Lacey for the services rendered for her, and there is no credible evidence to the contrary. In the other instances, the proof is not as satisfactory as it is in the two matters just mentioned, but the evidence in these matters shows that he operated under a general system or plan the same as that followed by him in the Sheldon and Coghlan matters. It seems apparent to us that he for some years during the period of his disbarment carried on the practice of law using Davis as a subterfuge when the interests he represented required court action. The evidence will not support his claim that he was simply the clerk for Davis and that the services performed by him were that of a ministerial character as an employee of Davis. The great weight of the evidence is not only against this claim but is to the effect that he was the principal in these matters and employed, or at least arranged

with, Davis to assist him. "If it were true that he has been in fact acting as an attorney and counselor at law, or by his conduct has been attempting to do under cover that which he could not lawfully do at all, then, of course, his application should be denied." (*In re McKelvey*, 82 Cal. App. 426, 429 [255 Pac. 834].)

The evidence above shows that applicant has been guilty of such conduct, and, therefore, his present application should be denied. It is so ordered. When applicant can satisfy this court that he has in good faith hereafter refrained from the practice of law for a reasonable time, a further application by him may receive more favorable consideration by this court.

LANGDON, J., Dissenting.—I dissent. The applicant's petition to the Board of Governors of the State Bar first resulted in an even division of the members thereof on the question of his right to readmission to practice. A subsequent vote showed four members in favor of the application. The chief issue was, as it must be in all such cases, whether the applicant had so rehabilitated himself as to warrant reinstatement. The majority opinion does not deal with this issue, and instead relies upon doubtful and conflicting evidence of his activities in recent years to hold that he was guilty of practicing law during the period of disbarment.

In my opinion this evidence is unsatisfactory and unconvincing. The real question, in my mind, is whether petitioner has, in addition to paying the price of his misdeeds, actually rehabilitated himself and proved that he possesses the necessary character and integrity to entitle him again to pursue the only profession for which he is fitted. On that question the opinion is silent, but the record is eloquent. An honor roll of nineteen judges, over one hundred prominent attorneys, including four former members of the Board of Governors of the State Bar, officials of the prison board, and other civic leaders, has been presented to us by letters and oral testimony, to show the widespread feeling among those who know the applicant that he may now be safely entrusted with the duties and responsibilities of the practice of law.

On such a record I believe that the application of Joseph Lacey should be granted.

Rehearing denied.