[S. F. No. 17026. In Bank. Sept. 8, 1944.]

DAVID G. WETTLIN, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

N. D. Meyer for Petitioner.

Jerold E. Weil and Jack J. Rimel for Respondent.

THE COURT.—The above-named petitioner, David G. Wettlin, was by an order of this court of date November 2, 1933, disbarred from the practice of law in this state. The ground upon which the order was based was that petitioner had theretofore in the Superior Court of the County of Orange been convicted of the crime of grand theft.

On or about the first day of June, 1943, petitioner filed before the Board of Bar Governors his application to be reinstated as a member of the bar of this state. As a special committee to hear and pass upon said application the Board of Bar Governors appointed three members of the bar of the county of Orange, the county of which petitioner was a resident at the date of filing his application and in which he had resided for thirty years immediately prior thereto with the exception of eighteen months. A hearing on the application was held, at which petitioner appeared personally and by counsel. The State Bar was represented by counsel in opposition to said application. As a result of the hearing the committee made findings and a report to The State Bar unanimously recommending that ''the present petition for readmittment to the bar be denied upon the ground that petitioner has not shown a sufficient rehabilitation since his disbarment.'' When said matter came before the Board of Bar Governors, that body unanimously recommended that petitioner's application be denied. Thereafter, within the statutory period fixed therefor, petitioner filed herein his petition for a review of said proceedings before the Board of Governors, which petition was granted, and the matter is now before us.

Petitioner is fifty-eight years of age. He is married and lives with his wife in the city of Orange, Orange County, California. They have two children, a daughter of the age of twenty-eight years and a son two years younger. The daughter is married and lives with her husband. The son is unmarried and lives with his parents.

The basis of the charge against petitioner in the criminal action in which judgment was rendered against him upon

finding him guilty of grand theft, was his misappropriation of money belonging to the estate of Jacob Heist, deceased. Petitioner was executor of the last will of said deceased, and as such executor, there came into his hands, among other property belonging to the estate of said deceased, the sum of $3,630.37, which petitioner used to pay his personal expenses.

Upon the heirs of the deceased learning of the condition of the executor's account, a petition for his removal was filed. He resigned pending such proceedings and a Mrs. Johnson was appointed administratrix with the will annexed of said estate. Demand was made on petitioner as executor for the amount due from him. He endeavored to raise funds from his wife and friends, and approximately $1,000 was conditionally subscribed for that purpose, but Mrs. Johnson as said administratrix refused to accept it in settlement of his account. He states that she refused to accept any amount less than the total sum due from him. A criminal complaint was then filed against him accusing him of grand theft in embezzling said sum from said estate. He pleaded guilty to the charge and was sentenced to the state prison. He served some eighteen months in San Quentin and was then released on parole. On October 23, 1939, he received a full and unconditional pardon from Governor Olson. Upon being released from San Quentin, petitioner returned to his home in the city of Orange in Orange County, and has continually resided there ever since. After returning to his home the record shows that he has been diligent in seeking such employment as a person in his situation might reasonably expect to secure. He has been only partially successful in that endeavor. Petitioner has devoted much of his time, when out of employment, to the study of law, thereby keeping himself abreast of the recent decisions and changes in the law, and with particular attention given to laws governing water and water rights.

In support of petitioner's application for reinstatement before the special committee appointed by the Board of Bar Governors, a number of witnesses testified in his behalf and stated that in their opinion he had sufficiently rehabilitated himself to be permitted to re-enter the practice of law. Among these witnesses were a former chairman of the Board of Supervisors of the County of Orange, who had held that position for sixteen years; the present president of the Orange

County Bar Association; the City Attorney of Huntington Beach and officers of other municipalities in the county of Orange; and the owner of the Santa Ana Independent, a newspaper published in the city of Santa Ana. In addition to the testimony of these witnesses in petitioner's behalf, there were received in evidence some sixty-six letters from residents and citizens of said county, including the district attorney and the sheriff of the county. One of said letters was from a former district attorney who held that office at the time of petitioner's conviction, and a number of the others were from practicing attorneys in said county. The writers of these letters, like the witnesses who testified orally before the committee, gave as their opinion that Mr. Wettlin had rehabilitated himself to such an extent that he should be permitted to re-enter the practice of law.

The committee found that since being released from the state penitentiary, petitioner had led an honest life and that his present ability and learning in the law were sufficient. However, the committee further found "that the rehabilitation of petitioner since his disbarment is insufficient. In this connection the committee desires to report that both the financial position of petitioner and his wife has been such that some restitution might have been made but no attempt whatever has been made in this regard." With respect to the income received by petitioner and his wife, the committee found that "The evidence discloses that for at least four years petitioner and his wife have had together an annual income in excess of $4,000.00." Petitioner's own evidence and that of his wife support this finding as to the income of himself and wife during said years. His wife's testimony shows that she was appointed postmistress of the city of Orange in March, 1933, and has continuously held that position up to the date of the hearing before the committee. Her salary at that time was $2,900 a year. In 1940, her salary was increased to $3,200 per annum and in January, 1943, to $3500 per annum. Petitioner was released from prison in the month of May or June, 1935. For some time thereafter he was employed as an insurance agent, barely making his expenses. From July 15, 1939, to January 15, 1940, he was employed by the city of Huntington Beach to codify and revise the ordinances of that city. From February 1, 1941, to May 15, 1942, he was employed by the city of Santa Ana in "attempting to get title to lots

which had been sold to the state'' at a salary of $175 a month. On October 4, 1942, petitioner secured employment with the Douglas Aircraft Company at Long Beach at a wage of sixty cents per hour. He remained in that employment until May 22, 1943, when he quit the company on account of his health. He received six increases in his salary of five cents per hour during that employment. A few days thereafter, that is, on May 26, 1943, he accepted employment as a fireman at the Santa Ana Air Base at the wage of $1,680 per year. He states that, after deductions for bonds, retirement charges, ''and several other things; . . . the actual money I receive is about $57.00 twice a month.''

Petitioner's daughter married in 1936 and since that date has maintained a home of her own, and is not dependent upon her parents for support. His son graduated from college in 1938, and immediately thereafter he secured employment and has supported himself without any assistance from his parents. He lives at home but pays for his board and room.

It further appears that petitioner's wife purchased a home in September, 1941. The contract price was $6,500. Six hundred dollars was paid on the purchase price at the date of the purchase, the balance is payable in monthly installments of $36. In his application for reinstatement petitioner makes mention of this contract to purchase and also lists his financial obligations, none of which requires any special mention. They are of comparatively minor amounts. He does not, however, list his obligation to the Heist estate, nor to certain persons to whom he became indebted in a transaction growing out of the Parra case, which latter matter will be discussed later in this opinion.

To summarize the findings and conclusions of the administrative committee, as approved by the Board of Bar Governors, it was definitely found that since petitioner's release from prison, he had led an honest life, and that his learning and ability in the law were sufficient to justify his reinstatement as a member of the bar of this state, but that his rehabilitation since his disbarment was insufficient for the reason that he had made no attempt whatever to make restitution to those whom he had defrauded, notwithstanding the fact that the financial condition of both petitioner and his wife was such that some such restitution might have been made. The conclusion of the administrative committee that pe-

titioner had failed to show that he had sufficiently rehabilitated himself to be entitled to be restored to the practice of law was predicated on its finding that he and his wife together had an annual income in excess of $4,000, and that no effort had been made by him during that time to reimburse those whom he had wronged by misappropriating money coming into his hands which belonged to them. It may be conceded that his wife was under no legal obligation to pay her husband's debts, and that therefore she was not legally required to make any contribution to those whom he had defrauded. At the same time, while she perhaps was not equally interested with her husband in his reinstatement, yet his restoration as a member of the bar was of tremendous importance to her—economically, socially, and most of all for her own good name and that of her children. Yet if she declined to look at the matter in that light and refused to contribute any part of her earnings toward the clearing up of her husband's good name, her failure in that respect cannot legally be laid at his door. It is petitioner's conduct, and not that of any other individual, that we have under consideration, and it is his conduct, and his conduct alone, that must stand the test in determining whether he has sufficiently rehabilitated himself. "Reformation may only be brought about by the individual." (*In re Andreani,* 14 Cal.2d 736, 749 [97 P.2d 456].) ■ That brings us to the precise question as to whether, since his release from prison, petitioner's own earnings have been such that he, under all the surrounding circumstances, might have been expected to restore some part of the money which he had misappropriated. While it is true that his earnings were not large in amount, and especially during the few years immediately after his release from prison, the wages that he had received some two or more years before his application was filed have not been of a minimum amount. At times he received as high as $175 per month. In one employment he received as high as eighty to ninety cents per hour, and at the time of the hearing he was receiving the sum of $1,680 per annum. His living expenses during this time were very small. His two children, as well as his wife, were self-supporting and he had no one but himself to care for. Yet the record shows that at no time since his release from prison did he make any attempt to reimburse the Heist heirs for any part of the money which he had embezzled from

the estate. Whether he considered that by serving his prison term he had not only paid his debt to society, but had also discharged his obligation to the Heist heirs, we may not be able to determine, but his conduct respecting his indebtedness to them tends strongly to that conclusion.

A further transaction in which petitioner was involved and the details of which were brought out before the committee was the Parra case already referred to. This was an action instituted by a minor through his guardian for personal injuries. Petitioner was employed to bring the action, which he did, and at the trial he had associated with him the legal firm of Head, Rutan and Scovel. The plaintiff recovered a judgment which was affirmed on appeal. The judgment was paid by a certified check in the sum of $2,556.26 drawn in favor of petitioner and the firm of attorneys associated with him. Petitioner received the check and took it to Mr. Head of said firm. The latter endorsed it in the name of the firm and returned it to petitioner, who deposited it in his own name and appropriated the money to his own use. Without going into further detail, it need only be said that the guardian made demand upon the attorneys for the money. A compromise was entered into and the matter was settled for $800. Petitioner paid $200 of this amount, and each of the three members of the law firm contributed $200. It is not clear just when this settlement took place. The findings do show that the check was delivered to petitioner sometime in February, 1931. It was probably between that date and the date petitioner was disbarred, which was November 2, 1933. Yet the evidence shows that petitioner has not repaid to either of said attorneys any part of the money which they advanced for him, and he admits that he has never spoken to any one of said attorneys in regard to the matter from the date of the settlement to the date of the hearing before the committee. Such utter failure to recognize his responsibility in a matter of that character tends strongly to the conclusion that he has not yet acquired that state of mind which is essential in one who has attained reformation.

While the courts are interested in the regeneration of erring attorneys (*In re Stevens,* 197 Cal. 408 [241 P. 88]) and it is not the policy of the law, nor is it in the interest of justice, that an attorney who has been disbarred shall never be readmitted to practice (*In re Nisbet,* 77 Cal.App. 260, 261

[246 P. 120]) yet where his record fails to show that he has sufficiently rehabilitated himself to be entrusted with the responsible duties of an attorney at law, his application for reinstatement should be denied. (*Kepler* v. *State Bar*, 216 Cal. 52 [13 P.2d 509].)

"One who has been disbarred for acts involving a high degree of moral turpitude—and those committed by petitioner were of that character—'should not be reinstated in the ranks of the legal profession except upon the most clear and convincing, nay, we will say upon overwhelming, proof of reform—proof which we could with confidence lay before the world in justification of a judgment again installing him in the profession. . . .'" (*In re Morganstern*, 85 Cal.App. 113, 117 [259 P. 90]; see, also, *In re Cate*, 60 Cal.App. 279, 287 [212 P. 694]; *Vaughan* v. *State Bar*, 208 Cal. 740, 743 [284 P. 909].)

■ It has been definitely determined by this court that a pardon of an attorney previously disbarred on account of his conviction of the offense of which he was subsequently pardoned does not of itself reinvest him with those essentials required of an attorney at law. (*In re Lavine*, 2 Cal.2d 324 [41 P.2d 78, 42 P.2d 311].) ■ While letters of recommendation are admissible in proceedings of this character, neither such letters nor the testimony of witnesses as to the good character of petitioner, however numerous or laudatory, can overcome the direct and positive evidence as to petitioner's character. (*Cf. Vaughan* v. *State Bar*, *supra*; *In re Stevens*, *supra*.)

■ We do not mean to hold that it is necessary for a disbarred attorney in all cases to make full restoration in order for him to show that he has sufficiently rehabilitated himself to be entitled to be reinstated as a member of the bar. As stated in the case of *In re Andreani*, *supra*, at page 750 : "The importance of making restitution, and a conclusion respecting the weight which should be attached thereto, should be determined largely by the financial or other ability of the attorney to restore that which he has misappropriated, as well as by his attitude of mind regarding the matter." In that case no restitution whatever was made, yet the applicant was reinstated. In other cases only partial restitution had been required, but in all cases even when full restoration is made,

the applicant must show a proper attitude of mind regarding his offense before he can hope for reinstatement. In other words he must produce satisfactory and convincing proof that in his efforts to reform his ways he has been reasonably successful. The evidence in petitioner's behalf does not meet this test for the reasons hereinbefore set out.

The recommendation of the Board of Bar Governors is approved and the application of petitioner for reinstatement is denied.