**Jerry D. CHANEY, Appellant,**

v.

**The STATE BAR OF CALIFORNIA et al., Appellees.**

**No. 21402.**

United States Court of Appeals
Ninth Circuit.

Nov. 21, 1967.

Jerry D. Chaney (argued), in pro. per.

O'Melveny & Myers, Philip F. Westbrook, Jr. (argued), Los Angeles, Cal., for appellee.

Before CHAMBERS, Chief Judge, JOHNSEN* and KOELSCH, Circuit Judges.

JOHNSEN, Senior Circuit Judge.

A law school graduate, not elsewhere admitted to the practice, took the examination required for admission to the California bar and twice failed to pass. He was eligible to take the examination a third time but chose not to do so. Instead, he brought suit under the Civil Rights Act of 1871, 42 U.S.C. § 1983, against the State Bar of California, members of its Board of Governors, and members of its Committee of Bar Examiners, in injunction and damages, for not being certified to the Supreme Court of California for admission.

The District Court dismissed the action and we affirm. We do so on the grounds that the alleged wrong upon which the suit is predicated does not involve any issue of constitutional substance; that, even if it had, this would not enable a suit to be maintained in the situation under the Civil Rights Act; and that it does not otherwise provide basis for any federal claim on which the court could grant relief. It may be observed in this connection that opportuni-

---

* Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

ty was accorded appellant to make any amendment or supplement to his complaint that he thought possible, but he stated he had none.

The extent to which federal concern is entitled to exist as to the right to be admitted to the practice of law in a State has been stated by the Supreme Court as follows in Schware v. Board of Bar Examiners of State of New Mexico, 353 U.S. 232, 238–239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796:

"A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. * * * A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. * * * Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory".

Appellant does not purport to claim, within the conditions of Schware, that there was no basis for the Committee of Bar Examiners' finding that he failed to pass the examinations taken by him. Nor does he purport to claim that the Committee was without basis to find that those whom it certified to the Supreme Court for admission had passed the examination so as to involve invidiously discriminatory action in this respect against him. His primary attack is a general one upon the form or type of examination regularly employed by the Committee and used by it in the two examinations taken by appellant.

The Committee's examinations have in form consisted of sets of questions covering some 24 subjects of the law, calling for discussion or essay answers and thus requiring exercise and demonstration of analytical and reasoning capacity. It ad-mittedly is the form of examination employed generally in the law schools of the country, and the form suggested for bar-admission use in the American Bar Association's Recommended Standards for Bar Examiners (1959), as follows: "The major portion of the Bar examination should consist of questions in the form of hypothetical fact problems requiring essay answers."

Within the recognition contained in Schware of the right of a State to require high standards of relevant qualification for admission to its bar, and in relation to the condition thereof that any such required qualification must however have "a rational connection with the applicant's fitness or capacity to practice law", we are unable to see any possible federal question in the fact of the use by California of the essay-type examination as such. To us it seems patent on its face that California has the right to allow its Committee of Bar Examiners to use such a type of examination in demonstration by those seeking admission to its bar, as a qualification standard, that they have the capacity to analyze general legal situations and to make application thereto of such general legal knowledge as can be expected to be possessed by the graduates of accredited law schools. The existence of this qualification certainly has a rational connection with the capacity to practice law, for it inherently is the primary basis of general legal service. And of course there also is involved in such an essay examination an indication as to the possession or lack of knowledge in the legal fields to which the questions relate.

There can therefore exist no constitutional substance in such theoretical attacks of appellant as that essay-type examinations are fundamentally unfair and improper, because the grading thereof is a matter of subjective evaluation by the examiner so that the marks given can and are likely to turn on how closely the applicant's discussion and solution correspond with the examiner's personal views or legal philosophy; that within the discretionary range which is open to

exercise in subjective evaluation, whether motivatedly or unmotivatedly done, there is no possible way that the examiner's grade can be demonstrated to be wrong; and that it therefore should in legal fairness be held that the Committee can have the right only to give examinations of an objective character which are without any margin for discretion in grading— such as questions calling for "yes" or "no" answers, or questions otherwise subject to determination of correctness of answer definitively, like [in example given by appellant] "List the grounds for demurrer in the State of California".

But beyond the theoretical attacks made upon the form or type of examination employed by the Committee (appellant has urged others which are even more legally frivolous), the complaint also makes a general insinuative charge that the California examinations have been used "to control competition". The record shows that in his memorandum in the District Court appellant made the following argument, although this has not been carried into his brief here: "In 30 consecutive bar examinations only 50.7 per cent passed the spring examinations and only 53.5 per cent passed the fall examinations. State Bar Journal, Vol. 39, 1964, p. 158. Only slightly over 42 per cent passed the March, 1966, examination [the last one taken by appellant]. This is ample evidence that the examinations are actually being used as a device to keep down competition among attorneys".

■ As is sufficiently implied by our discussion of the attacks made upon the form of examination employed by the Committee, it cannot be held legally that essay-type examinations will from their very nature have operation and effect to unfairly restrict admissions. Appellant's charge that the examinations are being used "to control competition" can therefore only have basis (1) if the Committee has been engaging in dishonest grading to accomplish that end, or (2) if it is giving examinations of such scope or difficulty as to be outside the bounds of the educational prescriptions which the Cali-

fornia statute has made the basis for the right to take the examination.

Appellant made it clear in the hearing on appellees' motion to dismiss that he was not intending to assert or rely upon a claim of dishonest grading. Nor could such a general claim, if made, have had any application to his personal situation. As has been stated, he was not contending that he was entitled to certification on the basis of having in fact passed the examination, but on the basis of having been illegally frustrated of a proper opportunity to obtain certification because of the form and nature of the examinations which the Committee was employing.

■■ As to any intended implication that, apart from the alleged unfairness of the form of the examination as such, the Committee was giving examinations of a scope or difficulty beyond the standard of the educational prescriptions which had been made the basis of the right to take the examination, and so was engaging in unauthorized qualification requirements, the situation is in our opinion without any basis of possible substance on which such a contention legally could be made. In California's right to require high standards of qualification for admission to its bar, as recognized by *Schware*, it would implicitly be entitled to make its bar examinations more comprehensive and difficult than other States might choose to do. Thus, whatever should be the extent of comprehensiveness or difficulty which it saw fit to allow its Committee of Bar Examiners to employ in examination policy, this could not afford basis for any legal challenge, except as the qualification required to pass the examinations could be demonstrated to unarguably be outside the bounds of the educational prescriptions which had been made the basis for the right to take the examination. But unarguable demonstration that such an improper qualification requirement was being engaged in by the Committee could hardly be recognized as legally possible when some 50 per cent of those taking the California examinations have through the

years been able to pass them on the basis of the statutory educational prescriptions.

There is also, however, another reason why appellant's grievance at not being certified by the Committee cannot be made the basis of the present action. Under California law, refusal of the Committee to certify an applicant to the Supreme Court is not a terminative or fixative step in his seeking of admission to the bar. Neither the State Bar of California nor its Board of Governors nor its Committee of Bar examiners has any power to grant or to deny admission to the bar. That power is vested in the California Supreme Court alone. In re Lacey, 11 Cal.2d 699, 701, 81 P.2d 935, 936; Preston v. State Bar of California, 28 Cal.2d 643, 650, 171 P. 2d 435, 438–439.

The Committee of Bar Examiners (authorized by statute to be established by and serve for the Board of Governors) constitutes under California law merely an instrumentality or "arm" of the Supreme Court "for the purpose of assisting in matters of admission * * ". Id. It is authorized to administer the requirements for admission, to examine all applicants, and to certify those whom it finds to have fulfilled the requirements for admission. Cal.Bus. & Prof.Code, § 6046. But certification or refusal by it to certify is legally simply a recommendation to the Court. "The recommendation * * * is advisory only * * * "; the Court "has the inherent power and authority to admit an applicant to practice law * * * despite an unfavorable report * * * "; "the final determination in all these matters rests with this court" (California Supreme Court); and "its powers in that regard are plenary". *Lacey* and *Preston*, supra, ibid.

Statutory provision exists that "[a]ny person refused certification [by the Committee] may have the action * * * reviewed by the Supreme Court, in accordance with the procedure prescribed by the court". Cal.Bus. & Prof.Code, § 6066. The Court has made the refusal of the Committee to certify an applicant procedurally subject to consideration by it through the filing of a petition for review. Rule 59, Rules of Practice and Procedure of the Supreme Court of California (36 Cal.2d 43). It is to be particularly noted that what is involved in the Court's dealing with such situations is, as Konigsberg v. State Bar of California, 353 U.S. 252, 254, 77 S.Ct. 722, 724, 1 L.Ed.2d 810, has recognized, not the exercise of restricted appellate function but of original jurisdictional power.

. The significance of this is that under California law a refusal of certification by the Committee is not a power of deprivation. Only if the Court expressly or impliedly approves the Committee's refusal to certify so as to make this the basis or allow it to have the effect of a denial of admission can the Committee's actions of examination and refusal to certify come to be a fixative status and have the stature of a deprivation.

Thus the situation here is not a matter of exhausting state remedies in respect to an alleged federal right but of there being no basis for any alleged federal right to exist as to the Committee's actions until the California Supreme Court in the exercise of its original power over admissions has allowed these actions to serve as a deprivation. The holding of Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492, and McNeese v. Board of Education, 373 U.S. 668, 671–672, 83 S.Ct. 1433, 1435, 10 L. Ed.2d 622, that it is not necessary to exhaust state remedies before a suit can be instituted under the Civil Rights Act, is therefore without application. Whatever may be the scope of the right to sue granted by 42 U.S.C. § 1983, it extends in any event only to "the *deprivation* of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]". (Emphasis added).

Hence—repeating—even if the form of examinations given by the Committee, or their scope and difficulty in allegedly exceeding the educational qualifications prescribed for taking them, or the Committee's grading of them, had been ac-

tions which abstractly could be violative of due process or equal protection, this could not give rise to any right of federal remediability until it had been made the basis of a deprivation of admission. And such a deprivation could not legally occur until the California Supreme Court had expressly or impliedly approved the Committee's refusal to certify and thus had allowed the Committee's actions to become the basis of denial of admission.

Appellant contends, however, that it would be useless to ask the California Supreme Court to give consideration to the Committee's refusal of certification as a challenge to the Committee's examination actions. Even if this were true practicably, it would not enable the condition to be escaped that legally the Committee's action is without power to effect deprivation and that it can only come to have that consequence if it is given approval by the California Supreme Court and so allowed to become the basis of denial of admission.

We might add, however, that we can see nothing in the expressions of the California Supreme Court to indicate that that Court would not engage in due consideration of an attack upon the actions of the Committee for infirmities of substance which, if given approval and so allowed to effect denial of admission, would cause an applicant to be deprived of admission on violation of the Due Process or Equal Protection Clause of the Fourteenth Amendment.

The Court has stated in effect that it will not engage in a regrading of examination papers—as no federal court is likely to do either. It said in Staley v. State Bar, 17 Cal.2d 119, 121, 109 P.2d 667, that "Inability to pass the examinations, which are successfully passed by other applicants, will, of course, not be inquired into by the court". But it added that "if any dissatisfied applicant can show that he was denied passage of the state bar examinations through fraud, imposition or coercion * * *, this court will be willing to listen to his complaint".

While it is of no importance here, we think there can be no reason to doubt that if, such overwhelming numbers of those taking the examinations regularly failed to pass as reasonably to imply, either that examinations were being given of such scope or difficulty as to be outside the range of the educational prescriptions which have been made the basis of the right to take the examination, or that the Committee was engaging in improper grading in order generally to restrict admissions, the California Supreme Court would engage in appropriate inquiry.

We have held (1) that the contentions made by appellant do not on their facts present questions of constitutional substance, and (2) that even if any such substance had been involved, no deprivation of rights in relation thereto could exist as a basis for seeking federal relief until the California Supreme Court had given the Committee's actions effect as a denial of admission. In view of the basic aspects of this disposition, it is not necessary to deal with the other contentions urged by appellees for affirmance. Some of these have been the subject of express or implied holding in Clark v. State of Washington, 9 Cir., 366 F.2d 678. One of them—whether improper denial of admission to the bar or improper action of disbarment on the part of a State is at all (even injunctively only) subject to remedy under the Civil Rights Act or whether it is reachable solely through petition for certiorari to the United States Supreme Court from the state court order—is referred to in Clark, 366 F.2d at 680–681, but not expressly answered, as it need not be here.

Affirmed.