**Solomon FELDMAN, Jr., Appellant,**

v.

**STATE BOARD OF LAW EXAMINERS et al., Appellees.**

**No. 20405.**

United States Court of Appeals,
Eighth Circuit.

March 3, 1971.

Solomon Feldman, Jr., pro se.

J. W. Barron, Rose, Barron, Nash, Williamson, Carroll & Clay, Little Rock, Ark., for appellees.

Before VAN OOSTERHOUT and BRIGHT, Circuit Judges and NEVILLE, District Judge.

NEVILLE, District Judge.

Seeking to be admitted as an attorney to the Bar in the State of Arkansas, plaintiff sat for the written bar examinations prescribed by the Arkansas State Board of Law Examiners in June 1969 and again in March 1970. On both occasions he failed to obtain the requisite passing grade of 75 and his admission thus was not recommended by the Board to the Arkansas Supreme Court. Plaintiff brings this action pro se in the United States District Court against the Board, its chairman and Secretary, claiming a violation of his constitutional rights under 28 U.S.C. § 1343(3) which confers on the United States District Courts original jurisdiction over violations of 42 U.S.C. § 1983, the Civil Rights Act of 1871. He also asserts federal question jurisdiction under 28 U.S.C. § 1331(a). The district court dismissed the action. We affirm.

Although under the Arkansas Supreme Court Rules plaintiff may sit for a third examination if he wishes, he seeks instead mandatory injunctive relief in the form of an order by the District Court appointing what would constitute an *ad hoc* grader or group or committee of impartial graders to regrade his examination papers "to see if [he] has not in fact passed the Bar Examination * * * [and] that the trial court order the State Board * * * to recommend him for certification if it finds merit in what [he] asserts."[1] He alleges as various grounds for relief:

(1) The law and the Rules of the Supreme Court of Arkansas as written and as administered are unconstitutional in that "no procedure for regrading the bar examination" is provided and there is "no procedure available to pursue a wrong done to an applicant due to a grading malfunction."[2]

(2) Plaintiff was discriminated against because

(a) he had a past history of mental disability and had twice been an inmate at a State mental institution[3]

(b) he is Jewish

(c) he is a nonconformist.

(3) The Board acted negligently, intentionally and through unavoidable mistake.[4]

(4) Plaintiff believes in good faith that he passed the examination and that the Board discriminated against him in grading.

The trial court, J. Smith Henley, in a memorandum stated that he "very gravely doubts" that the complaint states any claim for money damages. No such assertion has been urged or argued to this court and we treat the case as seeking solely mandatory injunctive relief of the type stated above. The trial court opined that the question of jurisdiction is doubtful under Jones v. Hulse, 391 F.2d 198 (8th Cir. 1968), cert. denied 393 U.S. 889, 89 S.Ct. 206, 21 L.Ed.2d 167 (1968), which cites and relies on Theard v. United States, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), and that the question of whether the complaint states a claim upon which relief can be granted also is not free from doubt. He expressly did not rest his decision on either of these grounds however. We think he safely could have done so on either or both such grounds and could have entered a summary judgment for defendants. Rather he chose to dismiss the complaint without prejudice and in a thoughtful and well-reasoned memorandum concluded that the action was premature "and will remain so until plaintiff has sought relief from the Supreme Court of Arkansas itself." He found that plaintiff had made no ap-

---

1. Plaintiff-Appellant's Brief, p. 2.

2. Plaintiff-Appellant's Brief, p. 9.

3. For some time after plaintiff's discharge in 1966 from his first stay in a mental institution, he was denied permission to write the examination for inability to furnish a required certificate from such institution, though subsequent to a second period of residence therein he did obtain such a certificate in 1969.

4. Plaintiff-Appellant's Brief, p. 1.

plication or request to that court to review his case or to grant him relief.

██ The principle is firmly established that the judicial branch of the government, acting through the courts, has exclusive jurisdiction to admit, control and disbar attorneys. The courts may and frequently do honor implementing legislation, but clearly are not bound so to do.[5] In re Nevius, 174 Ohio 560, 191 N.E.2d 166 (1963). So the court by constituting a Board of Law Examiners, retains jurisdiction over its operations and ultimately over admissions to the bar. The Board is an administrative aid to the court. It does not itself admit applicants to the bar, nor disbar attorneys, but merely makes recommendations to the court, which recommendations the court may or may not elect to follow. An adverse Board recommendation is that and nothing more and itself is not a deprivation or denial of admission. The language in Chaney v. State Bar of California, 386 F.2d 962 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S.Ct. 1262, 20 L.Ed.2d 162; re. denied, 391 U.S. 929, 88 S.Ct. 1803, 20 L. Ed.2d 670 (1968), is particularly appropriate here:

"The significance of this is that under California law a refusal of certification by the Committee is not a power of deprivation. Only if the Court expressly or impliedly approves the Committee's refusal to certify so as to make this the basis or allow it to have the effect of a denial of admission can the Committee's actions of examination and refusal to certify come to be a fixative status and have the stature of a deprivation.

Thus the situation here is not a matter of exhausting state remedies in respect to an alleged federal right but of there being no basis for any alleged federal right to exist as to the Committee's actions until the California Supreme Court in the exercise of its original power over admissions has allowed these actions to serve as a deprivation. The holding of Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492, and McNeese v. Board of Education, 373 U.S. 668, 671–672, 83 S.Ct. 1433, 1435, 10 L.Ed. 2d 622, that it is not necessary to exhaust state remedies before a suit can be instituted under the Civil Rights Act, is therefore without application. Whatever may be the scope of the right to sue granted by 42 U.S.C. § 1983, it extends in any event only to 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States]' (Emphasis added)." 386 F. 2d at 966.

The Supreme Court of Arkansas thus has the inherent power to admit or to disbar lawyers, its officers, without regard to the Board's action, though obviously, as with most courts it would be expected normally to follow the recommendations of the agency it has created to assist it.

██ Plaintiff in this case is not proscribed as to an application to the Arkansas Supreme Court for relief. The Rules of the Arkansas Supreme Court constituting the Board, setting forth its procedures and regulating its activities were in evidence. Despite the fact that these rules provide in detail a method of review by the Arkansas Supreme Court should the Board determine that an applicant is ineligible to sit for the examination but makes no provision

---

5. Amendment 28 to the Arkansas Constitution expressly confers on the Supreme Court the power to "make rules regulating the practice of law and the professional conduct of attorneys at law." The Arkansas Legislature provided that applicants for admission to the bar shall be examined "pursuant to Rules of the Supreme Court of this State." Arkansas Statutes 25–103 (1962), and the legislature declares its intent that its legislation shall be "in aid of and subordinate to the right of the Supreme Court of Arkansas to regulate and define the practice of law and prohibit the unauthorized or unlawful practice thereof by appropriate rules, order and penalties." Ark.Stat. 25–217 (1962).

for a review by the court as to those applicants who do sit for but fail the examination, such does not wreak a denial of due process or equal protection. In view of the court's inherent power as above, this absence clearly does not render sterile the court's ability to review, and if it so chooses to disregard the actions and recommendations of the Board of Law Examiners.[6]

■ Plaintiff clearly has a right to take his grievance to the Arkansas Supreme Court and the failure to provide a detailed procedure in the Rules for so doing does not render them unconstitutional; nor has plaintiff been denied either substantive or procedural due process based on a mere adverse recommendation of the Board of Law Examiners. The District Court therefore was sound in dismissing the complaint on this, if on no other ground.

■ As to plaintiff's second claim that he was discriminated against because he had been a mental patient, is Jewish and is a non conformist it is sufficient to say that he presented no evidence whatsoever in support of, nor to indicate that he might be able to demonstrate any such. The trial court, before its order of dismissal, entered a preliminary order on June 11, 1970 directing plaintiff to produce or at least to describe to the court any evidence he might claim to have to this effect. He produced none of substance prior to the later order of dismissal of June 23, 1970. Undoubtedly, could plaintiff show an invidious and purposeful effort to discriminate against him or perhaps an actual discrimination even without such an intent, on any of the grounds he specifies or on any other grounds such as fraud, he well might assert a violation of his constitutional rights. There is little question but what an applicant for admission to the bar as an attorney is entitled to both substantive and procedural due process and equal protection guaranteed by the Fourteenth Amendment. Willner v. Committee on Character, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224, 2 A.L.R.3d 1254 (1963); Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed. 810 (1957); Konigsberg v. State Bar of California, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961). See Schware v. Board of Bar Examiners of the State of New Mexico, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), where the Court stated:

"'* * * Obviously an applicant could not be excluded merely because he was a Republican or a Negro or a member of a particular church. Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory. Cf. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220." 353 U.S. at 239, 77 S.Ct. at 756.

It is clear from the record here however, and not disputed that all bar examinees are given a blind number, that only the number and not the name is placed on the examination papers so that the 11 members of the Arkansas Board of Law Examiners who grade the papers have no knowledge of, nor any way of learning whose paper is being graded. Extensive precautions are taken to determine that no mathematical error is made in totalling the grades. The only person knowing the name and matching number

---

6. A Board of Law Examiners clearly is not an administrative agency of the Executive Branch of government, but even were it, the Administrative Procedure Act would not require a hearing procedure for examiners since 5 U.S.C. § 554(a) (3) exempts from the hearing process "proceedings in which decisions rest solely on inspections, tests or elections;". These methods of determination obviously do not lend themselves well to the hearing process. See Davis, Administrative Law (1959) Sec. 7.09 p. 124 mentioning Bar Examinations as one type falling within this category.

is the Secretary of the Board, and he grades none of the papers.[7]

It seems to us, absent any proof of the type of discrimination in violation of constitutional rights on any of the grounds assigned by plaintiff or otherwise, plaintiff's remedy if any lies in presenting his grievance to the Arkansas Supreme Court. If the ruling there is adverse to him, he may apply for certiorari to the United States Supreme Court in the manner as was done in *Schware, Konigsberg* and *Theard*. As the trial court properly stated, it is not an appellate court and cannot in such a case as this review State court actions. See *Jones v. Hulse, supra.*

As to plaintiff's third contention centering around claimed honest errors of judgment, negligence or unavoidable mistake, there is authority that such are not generally within the purview of the Civil Rights Act, *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), and normally would form no basis for relief here. It seems clear to us however that in any event and apart from such a concept, no federal question is involved in this case within the meaning of 28 U.S.C. § 1331(a).

See *Chaney v. State Bar of California*, 386 F.2d 962 (9th Cir. 1967), cert. denied, 390 U.S. 1011, 88 S.Ct. 1262, 20 L. Ed.2d 162, re denied, 391 U.S. 929, 88 S.Ct. 1803, 20 L.Ed.2d 670 (1968), where an attack on the form and type of examinations with the grading of necessity a matter of subjective discretionary evaluation concerning which there was no way to demonstrate its error was repulsed. No federal question was found to exist. The court there said:

"The Court has stated in effect that it will not engage in a regrading of examination papers—as no federal court is likely to do either. It said in *Staley v. State Bar*, 17 Cal.2d 119, 121, 109 P.2d 667, that 'Inability to pass the examinations, which are successfully passed by other applicants, will, of course, not be inquired into by the court'. But it added that 'if any dissatisfied applicant can show that he was denied passage of the state bar examinations through fraud, imposition or coercion * * *, this court will be willing to listen to his complaint'." [8] 386 F.2d at 967.

7. Plaintiff stresses certain conversations claimed to have been had with Mr. Rogers, the Secretary of the Board of Law Examiners and endeavors to show a cursory attitude on his part and some sort of prejudgment as to plaintiff's passing the examination. Also, Mr. Rogers is said to be a member of the Board of a State hospital whose auditorium facilities were used to hold the examination. Even if true as plaintiff claims, or even if the inferences contended for could be drawn, such facts relating to one who has no part in the grading of the examination papers would hardly warrant or support a finding of discrimination in grading.

8. The court, speaking through Harvey M. Johnsen, sitting by designation in the Ninth Circuit, further commented:
"Within the recognition contained in *Schware* of the right of a State to require high standards of relevant qualification for admission to its bar, and in relation to the condition thereof that any such required qualification must however have 'a rational connection with the applicant's fitness or capacity to practice law', we are unable to see any possible federal question in the fact of the use by California of the essay-type examination as such. To us it seems patent on its face that California has the right to allow its Committee of Bar Examiners to use such a type of examination in demonstration by those seeking admission to its bar, as a qualification standard, that they have the capacity to analyze general legal situations and to make application thereto of such general legal knowledge as can be expected to be possessed by the graduates of accredited law schools. The existence of this qualification certainly has a rational connection with the capacity to practice law, for it inherently is the primary basis of general legal service. * * *
There can therefore exist no constitutional substance in such theoretical attacks of appellant as that essay-type examinations are fundamentally unfair and improper, because the grading thereof is a matter of subjective

Plaintiff's fourth contention, i.e., his mere belief in good faith that he passed the examination is not grounds for any finding of a violation of his constitutional rights. It is patent that his claim to this effect does not establish any discrimination or constitutional encroachment.[9] It is not suggested that the Arkansas examination is particularly susceptible to grading errors or that the Board is unusually inclined to make such errors. Nor can it be said that an essay type examination is inherently unfair or that such a test has no rational connection with an applicant's fitness or capacity to practice law.

What has been said above renders unnecessary a decision on the contention raised by defendants and which might well have some merit, that the Board of Law Examiners acts in a quasi judicial capacity as an integral part of the judicial process and as such enjoys judicial immunity from suit. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Barr v. Matteo, 360 U.S. 564, 569, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Clark v. State of Washington, 366 F.2d 678, 681 (9th Cir. 1966).

Nor need we pass on the question of whether the State Board of Law Examiners (as distinguished from the individual defendants) is a "person" within the meaning of 42 U.S.C. § 1983, the Civil Rights Act. See Zuckerman v. Appellate Div., Second Dept., Supreme Court of New York, 421 F.2d 625 (2d Cir. 1970); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (holding a municipal corporation not to be a person within the Civil Rights Act.)

Further, though we are cognizant always of the doctrine of abstention and the delicate position in which a federal court is placed when asked to review or abrogate a state court ruling or action, for all of the reasons above recited, this problem is not directly confronting us here and need not be the basis for our decision.

The district court's order of dismissal is affirmed, and for the reasons set forth in this opinion, should be deemed to be with prejudice as though on a motion by defendants for summary judgment, but without prejudice to such right or rights as plaintiff may have to apply for relief to the Arkansas Courts or to sit for a further bar examination or examinations.

evaluation by the examiner so that the marks given can and are likely to turn on how closely the applicant's discussion and solution correspond with the examiner's personal views or legal philosophy * * *."

9. Of approximately 100 who sat for one of the two examinations for which plaintiff sat, only 10 apparently failed.