295 S.E.2d 670

**Daniel V. LANE**

v.

**The W. VA. STATE BOARD OF LAW EXAMINERS, etc., et al.**

**No. 15499.**

Supreme Court of Appeals of West Virginia.

June 17, 1982.

Concurring and Dissenting June 22, 1982.

Concurring Sept. 7, 1982.

Neely, J., concurred in result but dissented as to reasoning and filed opinion.

Miller, C. J., concurred in result and filed opinion.

584

Barbara H. Fleisher and Jeffrey K. Materly, Preiser & Wilson, Charleston, for petitioner.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for respondents.

McGRAW, Justice:

This is an original proceeding in mandamus. The petitioner is Daniel V. Lane, a former resident of California who desires to practice law in West Virginia. The respondents are the members of the West Virginia State Board of Law Examiners, the administrative body responsible for the review of applications, the giving of examinations, the investigation of character, and the general evaluation of applicants for admission to the West Virginia State Bar. The petitioner seeks to compel the respondents to grant his application for admission to practice law in West Virginia without examination, and to allow him to be admitted to practice upon motion. Because we find the petitioner ineligible for admission without examination under our Code of Rules for Admission to the Practice of Law, we deny the writ.

The petitioner received the degree of Juris Doctor in May of 1975 from the Southwestern University School of Law, located in Los Angeles, California. He subsequently passed the California Bar Examination and was admitted to the practice of law in California in December of 1975. The petitioner was engaged in the active practice of law in California from the date of his admission to the California Bar until November of 1981, when he moved to Clarksburg, West Virginia. The record indicates that the petitioner has remained in good standing throughout his legal career.

In January of 1982 the petitioner submitted to the respondents his application for admission without examination to the practice of law in the State of West Virginia. On January 20, 1982, the respondents notified the petitioner that he could not be admitted on motion, but would be required to take the bar examination. The reason given by the respondents for denying the petitioner's application was that the petitioner did not qualify for admission without examination under Rule 3.070 of the Code of Rules for Admission to the Practice of Law, which provides, in pertinent part:

No examination shall be required of any applicant ... who has been admitted to practice in another state where requirements for admission at the time of the admission of the applicant in that state where then substantially the same as those of the state in which admission is sought at that time.

The board explained that the requirements for admission to the practice of law in California are not the same as the requirements in West Virginia because "California does not admit attorneys from any state by reciprocity, but requires all applicants to take an examination."

By letter dated January 30, 1982, the petitioner requested that the respondents reconsider his application. On February 5, 1982, the respondents replied by letter that, upon reconsideration of the petitioner's application, a majority of the board was of the opinion that the petitioner was not eligible for admission without examination under the provisions of Rules 3.000 through

3.070 of the Code of Rules for Admission to the Practice of Law.

The petitioner contends that he has satisfied all the requirements of Rules 3.000 through 3.070 necessary to entitle him to be admitted to the practice of law in West Virginia without examination, and that the denial of his application for admission without examination deprives him of his livelihood and means of support until at least July of 1982 when the next bar examination is scheduled. He further contends that the denial of his application for admission without examination on the ground of a lack of reciprocity with the State of California constitutes a denial of equal protection of the laws and of due process under the Constitution of West Virginia, and violates the privileges and immunities clause of the Constitution of the United States. The petitioner therefore requests that a writ of mandamus issue ordering that the West Virginia State Board of Law Examiners grant his application for admission to practice without examination, that the reciprocity requirement set forth in W. Va. Code § 30–2–2 (1980 Replacement Vol.) be declared unconstitutional,[1] and that he be awarded costs and such other and further relief as seems just.

Because we find that the petitioner has not satisfied all the requirements imposed by the rules of this Court to entitle him to be admitted to the practice of law without examination, we deny the requested relief without reaching the issue of the constitutionality of the reciprocity requirement contained in W. Va. Code § 30–2–2.

It is indisputable that with the adoption of the Judicial Reorganization Amendment of 1974, this Court became the constitutionally authorized repository of the power to define, regulate and control the practice of law in West Virginia. Prior to adoption of the 1974 amendment, article eight, section one of the West Virginia Constitution provided: "The judicial power of the State shall be vested in a supreme court of appeals, in circuit courts and the judges thereof, in such inferior tribunals as are here authorized and in justices of the peace." The 1974 amendment changed this language to read: "The judicial power of the State shall be vested *solely* in a supreme court of appeals...." (Emphasis added). The 1974 amendment also added the following language to section three of article eight: "The court shall have power to promulgate rules for all cases and proceedings, civil and criminal, for all courts of the State relating to writs, warrants, process, practice and procedure, which shall have the force and effect of law." We recently held in *State ex rel. Frieson v. Isner*, 168 W.Va. 758, 285 S.E.2d 641, 648 (1981) that article eight, section one *et seq.* of the West Virginia Constitution vests in the Supreme Court of Appeals the authority to define, regulate and control the practice of law in West Virginia. *See also Stern Bros., Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977). Thus, jurisdiction to establish standards for admission to the practice of law in West Virginia is vested in this Court. While the Legislature may enact statutes in aid of the exercise of that jurisdiction, *see State ex rel. Frieson v. Isner, supra*, the Legislature may not

1. W. Va. Code § 30–2–2 provides:

Any person duly authorized to practice as an attorney-at-law in any jurisdiction other than this State may be admitted to practice as such in the courts of this State, as a visiting attorney, or as a resident attorney, upon first complying with the rules and regulations applicable thereto prescribed by the supreme court of appeals of West Virginia, without being required to take the bar examinations of this State, if the other jurisdiction in which such person is already authorized to practice allows attorneys of this State to be admitted to the bar or to practice law in such jurisdiction without making it one of the necessary requirements that attorneys of this State take

the bar examinations of such jurisdiction. The supreme court of appeals of West Virginia shall prescribe specific rules and regulations dealing with the admission of such person from another jurisdiction to practice law in this State either as a visiting attorney or as a resident attorney; and no person from another jurisdiction shall be permitted to practice in the courts of this State in either classification until he has complied with the rules and regulations pertaining to such classification established by the supreme court of appeals. Nothing herein contained shall affect the right or status of attorneys admitted to practice in this State prior to the enactment of this section.

usurp, restrict, or impair the power of the judiciary to regulate the practice of law. *See State ex rel. Thorn v. Luff,* 154 W.Va. 350, 175 S.E.2d 472 (1970); *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959). *See also State ex rel. Frieson v. Isner, supra; Pushinsky v. West Virginia Bd. of Law Examiners,* 164 W.Va. 736, 266 S.E.2d 444 (1980).

The standards for admission to the practice of law this Court has promulgated include the requirements that applicants hold a baccalaureate or equivalent degree from an accredited college or university, complete a full course of study in a law school accredited by the American Bar Association and the Association of American Law Schools, hold a Juris Doctor or equivalent degree from such law school, and successfully complete the West Virginia Bar Examination. *See* Rule 1.000, Code of Rules for Admission to the Practice of Law. The purpose of these requirements is to protect the public from being advised and represented in legal matters by unqualified persons. *See* Rule 4.000, Code of Rules for Admission to the Practice of Law. As was stated in *West Virginia State Bar v. Earley, supra,* "admission to membership in the legal profession is a privilege granted in the interest of the public to those who are morally fit and mentally qualified for the sole purpose of protecting the unwary and the ignorant from injury at the hands of persons unskilled or unlearned in the law." 144 W.Va. at 528, 109 S.E.2d at 435. "It is the duty of this Court to scrutinize carefully the qualifications of persons who seek to be admitted to practice before the courts of this State, in order that the public may be protected and the courts assisted in the discharge of the vital duties of the administration of law and the resolving of legal controversies." *In re Eary,* 134 W.Va. 204, 208, 58 S.E.2d 647, 650 (1950), *quoted in Pushinsky v. West Virginia Bd. of Law Examiners, supra,* 164 W.Va. at 746, 266 S.E.2d at 450.

While it is true that four exceptions are made to the examination requirement, these exceptions are entirely consistent with the purpose of our strict admission requirements. The four classes of applicants who may, by Court rule, be admitted to the practice of law in West Virginia without examination are: (1) graduates of the College of Law of West Virginia University, *see* Rule 1.020, Code of Rules for Admission to the Practice of Law; (2) resident professors of law at the College of Law of West Virginia University who have been full time members of the College of Law faculty for at least five years, *see* Rule 5.000, Code of Rules for Admission to the Practice of Law; (3) attorneys employed by or associated with an organized legal services program providing legal assistance to indigents in civil matters, and who are admitted before a court of last resort of another state, *see* Rule 7.000, Code of Rules for Admission to the Practice of Law; and (4) attorneys who have engaged in the active practice of law in a sister state for five years preceding their date of application. *See* Rule 3.020, Code of Rules for Admission to the Practice of Law.[2]

Graduates of the College of Law of West Virginia University are exempt from the examination requirement because they are uniquely qualified to practice law in West Virginia. The West Virginia University College of Law is an accredited institution possessing a high quality, proficient program of legal education which, in addition to providing instruction in Anglo-American law, places special emphasis on West Virginia law and procedures. Thus, we take judicial notice that graduates of the College of Law of West Virginia University, because of their unique training in West Virginia jurisprudence, are, at the time of their admission to the West Virginia State Bar, the best qualified of all applicants. Because of their background of superior training for the practice of law in West

**2.** Our rules also permit limited appearances on behalf of indigent persons by eligible law students enrolled in this State in a law school approved by the American Bar Association, and by attorneys who are enrolled in a criminal law or poverty law and litigation graduate program in an approved law school. *See* Rules 6.000 and 7.000, Code of Rules for Admission to the Practice of Law.

Virginia they are properly exempt from the examination requirement imposed on other applicants.

Similarly, West Virginia residents who have been full time members of the faculty of the College of Law of West Virginia University for at least five years, are also exempt from the examination requirement. Requiring examination of this class of applicants who have devoted at least five years to the study and teaching of West Virginia law and procedures, would, as in the case of graduates of the College of Law of West Virginia University, be a vain, pointless and uneconomical exercise.

Attorneys of other states who are employed or associated with an organized legal services program are given limited permission to practice law in this State without prior examination in order to expedite the provision of legal services to indigent persons who otherwise would be unable to retain counsel. This overriding policy justifies the relaxation of the examination requirement for this class of applicants who, in any instance, must be members in good standing at the bar of a court of last resort of another state, and must demonstrate their good character in accordance with Rule 2.000.

■ The final class of applicants who may be admitted to the practice of law in West Virginia without examination are attorneys from other jurisdictions who have been admitted to the practice of law in a sister state and who have actively engaged in the practice of law for a minimum of five years. Examination is not required of this class of applicants because, presumably, they have already demonstrated their skill and general knowledge of the law by satisfying the admission requirements of a sister state and by actively engaging in the practice of law. However, in order to insure the correctness of this presumption, the rules for admission to the practice of law in West Virginia, as promulgated by this Court, require that an attorney who is

a member of the bar of a sister state and who desires to be admitted to the practice of law in West Virginia without examination, must bear the burden of showing that the standards for admission in the state where the attorney is admitted are "substantially the same" as the standards for admission in West Virginia. *See* Rules 3.000 through 3.070, Code of Rules for Admission to the Practice of Law.

■ Our standards for admission to the practice of law require at a minimum that applicants complete a full course of study in a law school accredited by the American Bar Association and the Association of American Law Schools, and that they hold degrees of A.B. or B.S. and LL.B or J.D., or their equivalent or higher degrees, from an accredited college or university. *See* Rule 1.000, Code of Rules for Admission to the Practice of Law. These requirements stand in stark contrast to those for applicants in California. California applicants are not required to hold a baccalaureate degree to be eligible for admission, but need only complete two years of college work, or demonstrate an equivalent intellectual ability. *See* Cal. Bus. & Prof. Code § 6060 (West 1974); Rule VIII, Rules Regulating Admission to Practice Law in California. Neither are California applicants required to complete a course of study in a law school accredited by the American Bar Association and the Association of American Law Schools. Rather, legal study in an unaccredited law school is permitted, *see* Cal. Bus. & Prof. Code § 6060 (West 1974); Rules IX and XIX, Rules Regulating Admission to Practice Law in California,[3] as is study in a law office under the supervision of a licensed attorney or a judge of a court of record, or by correspondence course. *See* Cal. Bus. & Prof. Code § 6060 (West 1974); Rule IX, Rules Regulating Admission to Practice Law in California. Thus, notwithstanding the affidavit submitted by the petitioner to the contrary, we must recognize that the standards for admission to the practice of law in California in 1975,

---

**3.** California is noted for its unaccredited law schools. Of the fifty-six unaccredited law schools extant in the United States, thirty-nine, or more than 69 percent, are located in Califor-

nia. *See* American Bar Association, *A Review of Legal Education in the United States—Fall 1980–81, Law Schools and Bar Admissions Requirements* at 45–48 (1981).

the time of the petitioner's admission to the California Bar, were not "substantially the same" as requirements for admission to the practice of law in West Virginia, and continue to differ in their requirements at this time. Thus, under the provisions of Rule 3.070 of the Code of Rules for Admission to the Practice of Law, the petitioner is ineligible for admission to the practice of law in West Virginia without examination.

By our holding we do not in any manner disparage the petitioner with regard to his qualifications or abilities to practice law in this jurisdiction. We simply find that he is ineligible for admission without examination under the rules promulgated by this Court. The record indicates the petitioner is an individual of good moral character with a sound educational and legal background. With proper preparation, he should experience little difficulty passing the West Virginia Bar Examination.

In summary, because the petitioner has not demonstrated a clear right to admission to the practice of law without examination, the writ of mandamus is denied.

Writ denied.

NEELY, Justice, concurring and dissenting:

I concur in the result in this case but dissent to the reasoning. The record reveals that Mr. Lane holds a bachelor's degree from an accredited college and a law degree from an accredited law school. Thus he meets all of our requirements for admission to practice on the basis of reciprocity except that he comes from California, a state which does not accord our residents admission to practice without examination on the basis of reciprocity.

Mr. Lane's constitutional point fails. It is a valid public purpose of this State to assure that other states accord to our citizens as favorable treatment as we accord to their citizens. Since our citizens do not vote or have political influence in California, our only method of assuring favorable treatment for West Virginia lawyers in Cal-ifornia is to mobilize a California lobby interested in fair treatment for West Virginians. How do we do that? Traditionally the means has been to accord the same treatment to Californians that they accord to us—the no ticket, no laundry approach to fair treatment. This, in fact, is the heart of the concept of "equal protection of the law."[1] If everyone must be treated the same, then the politically strong will protect the politically weak. In order for an equal protection violation to occur, discrimination must be invidious.

There is no invidious discrimination when we deny admission without examination to residents of other states that deny our residents admission without examination. All states that admit our residents to practice without a bar examination are entitled to have their residents admitted here without a bar examination. Reciprocity is the theory upon which those interstate relations unregulated by the federal government are predicated. Once the theory of reciprocity is held unconstitutional in one context, it becomes suspect in all contexts. The result is a free for all since states that wish to treat residents of other states decently will receive no reward for their kindness, while states that wish to treat residents of other states badly can never be punished.

I dissent from the majority's interpretation of our Rule 3.070 to require that the educational standards for *all* members of another state's bar be substantially the same as ours in order for *anyone* admitted to practice in that state to be admitted here. Clearly we have never interpreted the rule that way. We look to each applicant for admission by reciprocity to determine whether that individual's educational credentials meet acceptable standards, although not necessarily our own standards for initial eligibility to take the bar, and if those credentials are satisfactory, we then determine whether the candidate's state permits West Virginia lawyers who have practiced for five years to be admitted by

1. *See* J. H. Ely, *Democracy and Distrust: A Theory of Judicial Review,* Harvard University Press (1980).

reciprocity. If the other state permits admission by reciprocity, we then admit the candidate by reciprocity. Obviously, we do not admit lawyers by reciprocity who have done nothing but study law by correspondence course and passed a bar examination.

My concern about the majority's opinion is that it does not foresee the possible untoward consequences for West Virginia lawyers. The majority is correct that our standard for eligibility to take the bar examination is the highest in the United States. Consequently, no state has a standard "substantially the same" as West Virginia. However, the converse is true; we do not have a standard "substantially the same" as other states, which means that our lawyers may now be denied the benefits of reciprocity because we deny admission without examination to residents of states where the educational requirements for *all* applicants are marginally lower than our own.

That result is absurd and the State Board of Bar Examiners should take such action as may be necessary to assure continuing reciprocity for our residents by a rule permitting admission without examination in West Virginia to lawyers with acceptable educational credentials from other states who have practiced five years. I do, however, admit that our bar Rule 3.070 is unclear on this subject. It is obvious that our bar rules at some point before my tenure were copied from some model code. The language does not appropriately reflect our practice for as long as I can remember. When the model rules were adopted it was assumed that Rule 3.070 was concerned with reciprocity and not educational credentials.

MILLER, Chief Justice, concurring:

While I agree with the result reached by the majority that the petitioner has not demonstrated a clear right to be admitted to the practice of law in West Virginia without first successfully completing our bar examination, I do not agree with the reasons advanced by the majority in reaching this result. The majority holds that an attorney who is a member of the bar in another state and who desires to be admitted to the practice of law in West Virginia must show that the standards of admission in the state where the attorney is first admitted are "substantially the same" as the standards for admission in West Virginia before he is entitled to reciprocity.

The majority avoids discussing the reciprocity issue by fashioning a standard that if the state where the lawyer is admitted to practice has a lower standard of qualifications for taking its bar examination than we have then the lawyer cannot be admitted to practice in this State based on reciprocity. In this case the majority finds that California permits graduates from nonaccredited law schools to take its bar examination and since we require that candidates be graduates from an accredited law school our requirement is thought to be a substantially higher standard.

The anomaly in the majority's posture is that they ignore the fact that Mr. Lane did graduate from an accredited law school, did pass the California bar and had practiced in California for more than five years before coming to West Virginia. In every sense of the "standards" postulated by the majority, Mr. Lane would be entitled to reciprocity admission.

In my judgment, the majority opinion would have been more convincing had it acknowledged that Mr. Lane met our qualifications and proceeded to address the reciprocity issues. This was the central issue presented by both parties and involved the question of whether our negative reciprocity rule contained in W. Va. Code, 30-2-2,[1]

1. I use the term "negative reciprocity" to denote the fact that our statute precludes the granting of reciprocity to incoming lawyers where their states do not give reciprocity to our lawyers. The material portion of W.Va. Code, 30-2-2, provides:

"Any person duly authorized to practice as an attorney-at-law in any jurisdiction other than this State may be admitted to practice as such in the courts of this State, as a visiting attorney, or as a resident attorney, upon first complying with the rules and regulations applicable thereto prescribed by the supreme court of appeals of West Virginia, without being required to take the bar examinations of this State, *if the other jurisdiction in which*

violates the Privileges and Immunities Clause of Section 2 of Article IV of the United States Constitution.

The preeminent decision in this area is *Hawkins v. Moss*, 503 F.2d 1171 (4th Cir. 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975), where a New Jersey attorney sought reciprocity admission in South Carolina. However, that state had an admission rule similar to W. Va. Code, 30–2–2, which precluded reciprocity if the state that the attorney had practiced in did not accord reciprocity on substantially the same terms as South Carolina's reciprocity rule. New Jersey, the same as California in our present case, did not grant any reciprocity. The privileges and immunities argument was disposed of in this manner in *Hawkins, supra* at 1179:

"The argument that Article IV, § 2 denies to the state any right to enforce a rule such as Rule 10 is equally without merit. The basic thrust of that section is to prevent 'a state from discriminating against citizens of other states in favor of its own', *Hague v. C.I.O.* (1939) 307 U.S. 496, 511, 59 S.Ct. 954, 962, 83 L.Ed. 1423. So long, then, as the State does not subject the migrant attorney, seeking the right to practice in the State, to no more onerous requirements than those imposed on its own citizens seeking such right, it cannot be said that the State has violated the section. The obligation, from compliance with which the plaintiff seeks by this action to be excused, is exactly the same obligation imposed indiscriminately by the State, through its Supreme Court, upon its own citizens in the same position as the plaintiff."

The point is argued, however, that *Hawkins* must be read in the light of *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), where the Supreme Court unanimously held that an Alaska statute requiring oil and gas leases and related documents to contain a clause that would give preferential hiring to residents over nonresidents violated the Privileges and Immunities Clause. The State sought to justify the statute on the theory that it was designed to relieve unemployment. The real issue in *Hicklin* was not whether there was any discrimination practiced against the nonresident since this point was conceded but the case turned on whether the State could justify its action by showing it came within the recognized exception formulated in *Toomer v. Witsell*, 334 U.S. 385, 398, 68 S.Ct. 1156, 1163, 92 L.Ed. 1460, 1472 (1948), that "there is something to indicate that non-citizens constitute a peculiar source of the evil at which the [discrimination] statute is aimed." Moreover, *Hicklin* also reiterated *Toomer's* further requirement that there must be a "reasonable relationship between the danger represented by non-citizens, as a class, and the . . . discrimination practiced upon them. 334 U.S. at 399, 92 L.Ed. at 1460, 68 S.Ct. at 1164." 437 U.S. at 525, 526, 57 L.Ed.2d at 404, 98 S.Ct. at 2487.

In *Hicklin* the Supreme Court found that Alaska's high unemployment rate was not a result of the influx of nonresidents, "but rather the fact that a substantial number of Alaska's jobless residents—especially the unemployed Eskimo and Indian residents—were unable to secure employment because of their lack of education and job training or because of their geographical remoteness from job opportunities." 437 U.S. at 526–527, 57 L.Ed.2d at 405, 98 S.Ct. at 2488.

In the present case, there is no showing of an initial discrimination as between resident and nonresident lawyers. It must be kept in mind that as between these two classes reciprocity is a provision that favors rather than discriminates against the nonresident lawyers. It enables the nonresident lawyer to practice law in this State

*such person is already authorized to practice allows attorneys of this State to be admitted to the bar or to practice law in such jurisdiction without making it one of the necessary requirements that attorneys of this State take the bar examinations of such jurisdiction."* (Emphasis added)

Our Code of Rules for Admission to the Practice of Law, Rule 3.000, *et seq.*, Vol. 1, W.Va. Code p. 576 (Michie 1978 ed.), promulgated by this Court on March 23, 1973, does not contain a negative reciprocity provision.

without taking a bar examination. In *Lowrie v. Goldenhersh*, 521 F.Supp. 534, 537 (N.D. Ill. E.D., 1981), the court refused to strike Illinois' five-year reciprocity rule stating:

"The constitutional 'right to travel' under the Equal Protection and Privileges and Immunities Clauses to the Constitution does not imply that a citizen 'carries with him from state to state an absolute right ... to practice ... a profession....' *Hawkins v. Moss*, 503 F.2d 1171, 1178–79 (4th Cir. 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 400 (1975). Admission to practice in one state is not automatic admission to practice in the courts of another state. *Application of Wasserman*, 240 F.2d 213, 214–215 (9th Cir. 1956); *Hawkins v. Moss*, 503 F.2d at 1175–1176 ('licenses to practice law ... have no extraterritorial effect or value and can vest no right in the holder to practice law in another state.') The Supreme Court noted in *Shapiro v. Thompson*, 394 U.S. 618, 638 n. 21, 89 S.Ct. 1322, 1333 n. 21, 22 L.Ed.2d 600 that residency requirements to obtain a license to practice a profession are not necessarily penalties upon the exercise of the constitutional right of interstate travel. *See also Memorial Hospital v. Maricopa County*, 415 U.S. 250, 259 n. 13, 94 S.Ct. 1076, 1082 n. 13, 39 L.Ed.2d 306 (1974)."

*See also Ricci v. State Board of Law Examiners*, 427 F.Supp. 611 (E.D. Pa. 1977); *In re Huntley*, 424 A.2d 8 (Del.1980).

The petitioner cites several cases where courts have struck down residency requirements under which attorneys were required to live in a state for a certain period of time before they can take a bar examination. *E.g., Stalland v. South Dakota Board of Bar Examiners*, 530 F.Supp. 155 (S.D. 1982); *Strauss v. Alabama State Bar*, 520 F.Supp. 173 (N.D. Ala. 1981); *Sheley v. Alaska Bar Association*, 620 P.2d 640 (Alaska 1980); *Gordon v. Committee on Character and Fitness*, 48 N.Y.2d 266, 422 N.Y.S.2d 641, 397 N.E.2d 1309 (1979). These cases are distinguishable as they involve restrictions on the right to take a bar examination. In this area courts have shown a reluctance to sanction restrictions on the right to take a bar examination because it is the bar examination and character fitness that have traditionally been recognized as the accepted norms for gaining access to practice law in a state. *In re Griffiths*, 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973). Thus, attempts to impose other preconditions may be suspect. Here, however, we do not deal with an applicant who is seeking access to take our bar examination but rather one who seeks to avoid it by our reciprocity exception.

Petitioner's subsidiary equal protection argument also fails. In *Cimino v. Board of Education of County of Marion*, 158 W.Va. 267, 210 S.E.2d 485, 490 (1974), we recognized the two types of equal protection tests applied by the United States Supreme Court. The more demanding test which is applicable to fundamental and constitutional rights requires that a court must find a compelling state interest is justified by the statute or other classification scheme. The second standard is more relaxed and requires a finding that the classification bears a reasonable relationship to a proper governmental purpose. In *State ex rel. Piccirillo v. City of Follansbee*, 160 W.Va. 329, 233 S.E.2d 419, 423 (1977), we adopted these standards by applying the Equal Protection Clause of Section 17 of Article III of the West Virginia Constitution.

Even if we were to apply a strict scrutiny test as the United States Supreme Court has done on restrictions against the right to take a bar examination, *In re Griffiths, supra,* I do not believe our reciprocity rule violates equal protection standards. Again, it must be emphasized that our reciprocity rule is not a bar against gaining the right to practice law in this State. The right to take the bar examination exists and reciprocity is an exception to having to take the examination.

Furthermore, petitioner would draw the class to which he belongs most narrowly. It is not all nonresidents who seek reciprocity, for many of those will qualify for our reciprocity since they come from states that grant reciprocity to our residents. Pe-

titioner would compose the class by confining it to nonresidents from those few states which refuse reciprocity to nonresident lawyers on any terms. We are thus invited to judge the rationality of our reciprocity standard by the irrationality of such foreign state's standard. I would decline such an invitation for the reasons stated in *Hawkins v. Moss, supra,* at 1177:

"To secure for her citizens the reciprocal rights and advantages obtained under such statutes or rules is manifestly a legitimate interest and goal on the part of a state just as it is a legitimate interest of one nation to secure reciprocal property rights for its citizens in other nations. It is true, as the plaintiff argues, these statutes and rules treat differently those individuals admitted to practice their profession in states extending reciprocal rights and those from states not so granting those rights. But the mere fact that they 'affect some groups of citizens differently than others' or that they 'result in "incidental individual inequality" ' will not render such statutes or rules invalid. *Martin v. Walton* (1961) 368 U.S. 25, 26, 82 S.Ct. 1[2], 7 L.Ed.2d 5, reh. den. 368 U.S. 945, 82 S.Ct. 376, 7 L.Ed.2d 341."

Finally, I am conscious of the fact that our negative reciprocity standard is found in W. Va. Code, 30–2–2, and not in any express provision of the Code of Rules for Admission to the Practice of Law adopted by this Court.[2] I am also aware of the law set out in Syllabus Point 3 of the majority opinion as well as our other cases including *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959), which follows traditional law by placing the power to supervise and regulate the practice of law with the judiciary.

I would however recognize, as a number of courts have done, that where the Legislature passes a statute which may affect the practice of law such statute will not necessarily be struck down as an interference with the judiciary's supervisory control over the practice of law. The primary test is whether such statute is compatible

with the judiciary's goal in regard to the practice of law. One of the best expressions of this rule is found in *Sadler v. Oregon State Bar,* 275 Or. 279, 550 P.2d 1218, 83 A.L.R.3d 762 (1976):

"The state courts have adhered to the above two principles, i.e., that it is part of the inherent power of the judiciary to determine qualifications for practicing law, but that statutes which assist the court in this function and do not encroach thereon are valid.

" 'The power to admit the applicants to practice law is judicial and not legislative, and is, of course, vested in the courts only. Originally the courts alone determined the qualifications of candidates for admission, but to avoid friction between the departments of government, the courts of this and other states have generously acquiesced in all reasonable provisions relating to qualifications enacted by the legislatures. *Hanson v. Grattan,* 84 Kan. 843, 115 P. 646, 34 L.R.A. (N.S.) 240; *State v. Cannon,* 196 Wis. 534, 221 N.W. 603.' *In re Greathouse,* 189 Minn. 51, 248 N.W. 735, 737 (1933).

"See, also, *In re Opinion of the Justices,* 279 Mass. 607, 180 N.E. 725, 727, 81 A.L.R. 1059 (1932)." 275 Or. at 286, 550 P.2d at 1222.

The court in *Sadler, supra,* concluded that the overlap of the judicial and legislative powers arises from the Legislature's police power to protect the public welfare by promoting efficient and impartial administration of justice. *See also Feldman v. State Board of Law Examiners,* 438 F.2d 699 (8th Cir. 1971); *In re Keenan,* 313 Mass. 186, 47 N.E.2d 12 (1943); *Sharood v. Hatfield,* 296 Minn. 416, 210 N.W.2d 275 (1973); *Creditor's Service Corporation v. Cummings,* 57 R.I. 291, 190 A. 2 (1937); Annot., 144 A.L.R. 150 (1943).

I believe that the statute serves a valid state purpose to encourage other states to grant reciprocity to our lawyers. It is certainly compatible with the general goals that this Court should have with regard to

---

**2.** *See note 1, supra.*

the regulation of the practice of law. Moreover the statute recognizes our inherent power by directing that we set the general standards for reciprocity which we have done in Rule 3.020–3.070 of the Code of Rules for Admission to the Practice of Law.

Finally, I would hold the negative reciprocity provisions of W. Va. Code, 30–2–2, are not unconstitutional and would conclude that the petitioner is not entitled to practice in this State based on reciprocity and, therefore, I would deny the writ.